## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:25-cv-01145 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| V-COUNT GLOBAL HOLDING LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against V-Count Global Holding Ltd. ("V-Count" or "Defendant") for infringement of United States Patent Nos. 10,853,825 (the "'825 Patent"), 10,977,672 (the "'672 Patent"), 11,042,890 (the "'890 Patent"), 11,049,120 (the "'120 Patent"), 11,301,880 (the "'880 Patent"), 12,026,731 (the "'731 Patent"), 12,039,550 (the "'550 Patent"), 12,354,121 (the "'121 Patent"), and 12,423,718 (the "'718 Patent").

## THE PARTIES

1.      Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.      Upon information and belief, Defendant V-Count is a company organized and existing under the laws of the United Kingdom, with a principal place of business located at C/O Unit 4 Kinetica, 13 Ramsgate Street, London E8 2FD and may be served pursuant to the provisions of the Hague Convention.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.      This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.      V-Count is subject to the general and specific personal jurisdiction of this Court, based upon its regularly conducted business in the State of Texas and, on information and belief, in the Eastern District of Texas ("District"), including conduct giving rise to this action.

6.      V-Count has conducted and does conduct business within the State of Texas.

7.      V-Count has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.      This Court has personal jurisdiction over V-Count at least because V-Count has made, used, offered to sell, sold, or put into service the accused products, systems, or services within the State of Texas and, on information and belief, within this District, thus committing acts of infringement within the District, and has placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Eastern District of Texas. V-Count, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

9.      This Court likewise has personal jurisdiction over V-Count at least because, on information and belief, V-Count has committed acts within this District giving rise to this action

and has established minimum contacts with this forum such that the exercise of jurisdiction over V-Count would not offend traditional notions of fair play and substantial justice.

10.     This Court has specific personal jurisdiction over V-Count in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to V-Count's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1400(b) and 1391(c)(3) because V-Count is a foreign corporation subject to suit in any district.

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

12.     Alpha Modus Corp. specializes in the development of innovative retail technologies.

13.     At the core of Alpha Modus's technology portfolio, including the Asserted Patents, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

14.     Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at

https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Asserted Patents.

15.     Alpha Modus has entered into several intellectual property licensing agreements outside of litigation. These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '825 PATENT

16.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,853,825 (the "'825 Patent") titled "Method for monitoring and analyzing behavior and uses thereof," including the right to sue for all past, present, and future infringement. A true and correct copy of the '825 Patent is attached to this Complaint at Exhibit A.

17.     The '825 Patent issued from U.S. Patent Application No. 16/509,343 filed on August 4, 2020.

18.     The '825 Patent is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

19.     The Patent Office issued the '825 Patent on December 1, 2020, after a full and fair examination.

20.     The '825 Patent is valid and enforceable.

21.     The '825 Patent introduces a novel method for monitoring and analyzing consumer behavior in real-time to enhance sales through engaging digital customer experiences.

22.     The '825 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive

pressures from online retail by leveraging real-time data analysis and personalized engagement strategies.

23.    The inventors of the '825 Patent recognized a significant gap in the ability of brick-and-mortar retail stores to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method that bridges this gap by utilizing advanced technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies accordingly.

24.    The '825 Patent provides several advantages over the prior art, such as real-time customer monitoring and the ability to generate targeted promotions and advertising based on behavioral analytics. This approach aims to provide more relevant and engaging consumer experiences, thereby influencing purchasing decisions and potentially increasing in-store sales.

25.    The '825 Patent describes and claims a specific method incorporating information monitoring devices to gather and analyze data collected by tracking the demographic and tracking characteristics of customers to generate a real-time analysis, which is then used to communicate with sales associates for personalized customer interaction.

26.    Claim 1 of the '825 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about a first person in a group of persons at a retail store, wherein
    (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
    (iii) the one or more information monitoring devices comprise one or more video image devices,
    (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the first person using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of

gender of the first person, approximate age of the first person, and combinations thereof, and

(v) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the first person, wherein the tracking characteristic of the first person is selected from a group consisting of movement of the first person relative to the one more information monitoring devices, eye movement of the first person tracked by the one or more video image devices, and combinations thereof;

(b) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the first person to generate a real time analysis of the first person, wherein the analyzed information comprises the demographic characteristic of the first person and the tracking information of the first person;

(c) utilizing the real time analysis to select a sales associate from a group of sales associates at the retail store; and

(d) sending a communication to the sales associate that comprises at least a portion of (A) the information gathered by the information monitoring devices, (B) the real time analysis, or (C) both; wherein the sales representative can then directly interact with the first person in response to the communication.

## THE '672 PATENT

27.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,977,672 (the "'672 Patent") titled "Method And System For Real-Time Inventory Management, Marketing, And Advertising In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '672 Patent is attached to this Complaint at Exhibit B.

28.    The '672 Patent issued from U.S. Patent Application No. 16/985,001 filed on August 4, 2020.

29.    The '672 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

30.     The Patent Office issued the '672 Patent on April 13, 2021, after a full and fair examination.

31.     The '672 Patent is valid and enforceable.

32.     The '672 Patent introduces a novel system for real-time inventory management, marketing, and advertising within a retail store setting.

33.     The '672 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of the increasing prevalence of online shopping and the phenomenon of showrooming. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail.

34.     The inventors of the '672 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

35.     The '672 Patent provides several advantages over the prior art, such as real-time inventory management and the ability to generate targeted promotions and advertising based on behavioral analytics. This approach aims to provide more relevant and engaging consumer experiences, thereby influencing purchasing decisions and potentially increasing in-store sales.



FIG. 1



FIG. 2

36.     The '672 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, display relevant product information and pricing, and generate promotions for customers based on real-time data analysis.

37.     Claim 1 of the '672 Patent reads:

1. A system for real-time inventory management, marketing, and advertising on a first visual display at a first visual display location in a retail store, comprising:
(a) a server comprising:
    (i) one or more server processors, and,
    (ii) a server memory storing computer-executable instructions that, when executed by the one or more server processors, cause the server to:
        (A) identify, via image recognition, an inventory of one or more retail products physically located at the first visual display location in the retail store,

(B) display, on the first visual display, information about one or more of the one or more retail products physically located at the first visual display location,

(C) determine, in real-time, current pricing information regarding the one or more retail products physically located at the first visual display location,

(D) display, on the first visual display, the current pricing information regarding the one or more retail products physically located at the first visual display location,

(E) receive, using one or more information monitoring devices at the first visual display location, real-time data of a customer, and

(F) generate a promotion of one or more of the one or more retail products physically located at the first visual display location for the customer based on behavioral analytics.

**THE '890 PATENT**

38.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit C.

39.    The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

40.    The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

41.    The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

42.    The '890 Patent is valid and enforceable.

43.    The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

44.    The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

45.    The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.



*FIG. 1*



*FIG. 2*

46.    The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

47.    Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about
    a person at a retail store, wherein
        (i) the person is in proximity to at least one of the one or more information
            monitoring devices at the retail store,
        (ii) the one or more information monitoring devices are operably
            connected to (A) a server, (B) one or more databases, or (C) both, and
        (iii) the step of gathering information using the one or more information
            monitoring devices comprises
                (A) gathering object identification information of a product that the
                    person is interested in purchasing, and
                (B) gathering sentiment information of the person with respect to
                    the product;
(b) analyzing the information in real time using (A) the server, (B) the one or
    more databases, or (C) both gathered by the information monitoring devices
    about the shopping activities of the plurality of persons to manage inventory
    of the products in the retail store at the one or more product points, wherein
    the analyzed information comprises the object identification information and
    the sentiment information; and
(c) providing a response in real time based upon the analyzed information
    gathered by the information monitoring devices, wherein the response is
    selected from a group consisting of
        (i) sending a communication to the person directing the person to a
            location in the retail store at which the person can interact with the
            product,
        (ii) engaging the person based upon the product, wherein the engaging is
            performed using one more displays and content being displayed on the
            one or more displays is selected based upon the product,
        (iii) sending a communication to a second person in the retail store who
            can then in real time interact with the person regarding the product,
        (iv) providing marketing or advertising information to the person in real
            time based upon the product, wherein the marketing or advertising
            information is either product to the person by a display at the retail

store or by sending the marketing or advertising information to a mobile device of the person, and

(v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## THE '120 PATENT

48.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,049,120 (the "'120 Patent") titled "Method And System For Generating A Layout For Placement Of Products In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '120 Patent is attached to this Complaint at Exhibit D.

49.     The '120 Patent issued from U.S. Patent Application No. 16/837,577 filed on April 1, 2020, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

50.     The Patent Office issued the '120 Patent on June 29, 2021, after a full and fair examination.

51.     The '120 Patent is valid and enforceable.

52.     The '120 Patent introduces a novel system for tracking customer movement and for optimizing the layout of products provided within a retail store setting.

53.     The '120 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring and analyzing consumer behavior in the retail store in order to better optimize the layout of product available within the store using that information and analysis thereof. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail.

54.     The inventors of the '120 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the layout of products within the retail store using behavior information from consumers. The patent offers a solution by

integrating technology to analyze customer interactions with products in real-time, providing updated store layout suggestions by analyzing that information in order to enhance realized purchases and revenues from shoppers.

55.    The '120 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the layout of products available in the store.



FIG. 1



FIG. 2

56.    The '120 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and generate improved store layouts utilizing data analysis.

57.     Claim 1 of the '120 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein

> (i) the retail store has a first layout of products within and about the retail store,
>
> (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,
>
> (iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
>
> (iv) the one or more information monitoring devices comprise one or more video image devices,
>
> (v) the step of gathering information using the one or more information monitoring devices comprises
>
>> (A) gathering traffic information of the persons within and about the retail store, wherein the traffic information comprises (I) tracking movement of the persons relative to the one or more information monitoring devices, (II) identification of one or more stops that the persons make within and about the retail store, and (III) tracking position and duration of stop of the persons for each of the one or more stops,
>>
>> (B) gathering product interaction information based upon type of interactions the persons had with one or more products in the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products are viewed by the persons at each of the one or more stops, (II) the one or more products are picked up by the persons at each of the one or more stops, (III) the one or more products are carried away by the persons at each of the stops, and (IV) combinations thereof, and
>>
>> (C) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information gathered by the information monitoring devices about the shopping activities of the plurality of persons to generate a layout analysis, wherein the analyzed information comprises the tracking information, the product interaction information, and the object identification information; and

(c) utilizing the layout analysis to modify the first layout to generate a second layout of the products within and about the retail store.

**THE '880 PATENT**

58.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,301,880 (the "'880 Patent") titled "Method And System For Inventory Management In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '880 Patent is attached to this Complaint at Exhibit E.

59.    The '880 Patent issued from U.S. Patent Application No. 16/837,645 filed on April 1, 2020.

60.    The '880 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

61.    The Patent Office issued the '880 Patent on April 12, 2022, after a full and fair examination.

62.    The '880 Patent is valid and enforceable.

63.    The '880 Patent introduces a novel method and system for real-time inventory management within a retail store setting, designed to improve operational efficiency and customer experience.

64.    The '880 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and inventory management strategies.

65.    The inventors of the '880 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to

customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

66.     The '880 Patent provides several advantages over the prior art, such as real-time tracking of product interactions and the ability to send immediate responses for inventory adjustments. This method aims to minimize stockouts, enhance customer satisfaction, and boost sales by ensuring the availability of popular products.



*FIG. 1*



*FIG. 2*

67.     The '880 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, track product interactions, and generate real-time responses for inventory management based on data analysis.

68.     Claim 1 of the '880 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein
    (i) the retail store comprises a plurality of products that are stocked within the retail store, wherein the plurality of products are stocked upon one or more product points selected from a group consisting of shelves, end caps, displays, and combinations thereof,
    (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,
    (iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both;
    (iv) the one or more information monitoring devices comprise one or more video image devices,
    (vi) the step of gathering information using the one or more information monitoring devices comprises
        (A) gathering product interaction information based upon product interactions the persons have with one or more products in the retail store, wherein the product interactions information comprises (I) the one or more products are picked up by the persons at the retail store, and (II) the one or more products are carried away by the persons at each of the retail store, and
        (B) gathering object identification information of the one or more products that the persons interacted with during the product interactions;
(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the product interaction information and the object identification information; and
(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of
        (i) sending a communication to a retail person to check inventory levels for a first product of the one or more products at the product point for the first product,

(ii) sending a communication to the retail store person to immediately re-stock the one or more first products at the product point for the first product,

(iii) sending a communication to the retail store person to contact a distribution center to obtain the one or more first products for delivery to the retail store for restocking the one or more first products at the product point for the first product, and

(iv) sending a communication to add one or more first products to an inventory order for inventory for the retail store.

## THE '731 PATENT

69. Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,026,731 (the "'731 Patent") titled "Method For Personalized Marketing And Advertising Of Retail Products," including the right to sue for all past, present, and future infringement. A true and correct copy of the '731 Patent is attached to this Complaint at Exhibit F.

70. The '731 Patent issued from U.S. Patent Application No. 18/100,377 filed on January 23, 2023.

71. The '731 Patent is a continuation of application No. 17/590,605, filed on Feb. 1, 20022.

72. The Patent Office issued the '731 Patent on July 2, 2024, after a full and fair examination.

73. The '731 Patent is valid and enforceable.

74. The '731 Patent introduces a novel method for obtaining an information analysis of a shopper's activities, for tracking the shopper using information monitoring devices to determine location, and for providing targeted communications to that shopper based on their shopping history and real-time location.

75.    The '731 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of delivering personalized marketing and advertising tied to in-store behavior and purchase activity. The patent provides innovative solutions for enhancing consumer engagement and driving sales by delivering targeted coupons, promotions, and product information directly to shoppers.

76.    The inventors of the '731 Patent recognized the need for retailers to adapt to changing consumer behavior by using in-store monitoring technologies to gather information about a shopper's interactions with products, track their location, and then provide communications that direct the shopper to a retail store location and deliver personalized advertising or purchase options.

77.    The '731 Patent provides several advancements over previous methods, such as real-time analysis of consumer product interactions, real-time shopper location tracking, and using this information to provide communications including marketing advertisements, digital coupons, store-specific promotions, and purchase options such as pickup, delivery, or reduced price offers.

78.    The '731 Patent describes and claims a specific system incorporating servers, databases, and information monitoring devices including video image devices to monitor shopping activity, track consumer location, generate a real-time analysis of shopper behavior, and provide personalized product communications and store location information via interactive devices.

79.    Claim 1 of the '731 Patent reads:

1. A method for personalized marketing or advertising of one or more products for purchase by a plurality of persons from retail stores, wherein, for each person in the plurality of persons, the method comprising:
(a) obtaining an information analysis about the shopping activities of the person, wherein,
        (i) the information analysis is an analysis of gathered information by one or more first information monitoring devices about shopping activities of the person,
        (ii) the gathered information comprises gathered product interaction information of the person, wherein

(A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more first information monitoring devices, and

(B) the product interaction information is based upon shopping by the person of one or more first products,

(b) tracking the person using one or more second information monitoring devices to determine the location of the person;

(c) based upon the determined location of the person, providing the person, via a first interactive device, a communication, wherein the communication comprises

(i) a location communication comprising a retail store location at which the person can purchase a product, wherein the product relates to at least one of the one or more first products, and

(ii) a product communication that is directed to the person based upon the information analysis and that is selected from the group consisting of

(A) a product communication of marketing or advertising information regarding the product,

(B) a product communication of a coupon regarding the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

(C) a product communication of a coupon regarding one or more products that relate to the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

(D) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to ship the product to the person or an option for the person to pick-up the product, and

(E) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to purchase the product at a reduced price during a limited period of time.

## THE '550 PATENT

80.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,039,550 (the "'550 Patent") titled "Method for Enhancing Customer Shopping Experience in a Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '550 Patent is attached to this Complaint at Exhibit G.

81.    The '550 Patent issued from U.S. Patent Application No. 17/590,605, filed on February 1, 2022.

82.     The '550 Patent is a continuation of prior applications tracing back through the family, including U.S. Patent No. 10,853,825 (filed July 11, 2019), and U.S. Patent No. 10,360,571 (filed July 18, 2014), ultimately claiming priority to a provisional application filed July 19, 2013.

83.     The U.S. Patent and Trademark Office issued the '550 Patent on July 16, 2024, after a full and fair examination.

84.     The '550 Patent is valid and enforceable.

85.     The '550 Patent introduces an innovative system for enhancing customer shopping experience in a retail store by monitoring and analyzing consumer behavior in real time—leveraging technologies such as MAC-address tracking, eye tracking, object recognition of goods on shelves, open APIs, and an advertising broker rules engine—to drive sales via engaging, personalized digital customer experiences.

86.     The '550 Patent addresses pressing challenges faced by brick-and-mortar retail in the face of showrooming and the dominance of online retail. It offers novel solutions to provide richer, data-driven, in-store experiences that strengthen customer engagement and counter competitive pressures, by providing real-time analytics and personalized outreach strategies.

87.     The inventors recognized a vital deficiency in conventional brick-and-mortar stores: the lack of real-time insight into in-store shopper behavior that online retailers routinely exploit. The '550 Patent bridges this gap by providing a technological framework that enables retailers to capture behavioral data and dynamically adjust marketing, merchandising, and customer support accordingly.

88.     The '550 Patent offers several advantages over the prior art, including real-time behavior monitoring capabilities and the ability to deliver on-the-spot, personalized outreach via

interactive displays or sales assistance informed by tracking data—thereby enhancing the relevance of consumer interactions and potentially increasing in-store conversion rates.

89.     The '550 Patent describes and claims a specific system architecture that includes information monitoring devices (e.g., MAC tracking, eye tracking, object identification technologies) to gather and analyze real-time behavioral and demographic data, which then drives interactive outputs like demographic-aware displays, assistance prompts at shelves, and purchase facilitation.

90.     Claim 1 of the '550 Patent reads:

1. A method comprising:
(a) obtaining an information analysis about the shopping activities of a plurality of persons, wherein,
    (i) the information analysis is an analysis of gathered information by one or more information monitoring devices about shopping activities of a plurality of persons,
    (ii) the gathered information comprises gathered traffic information of the plurality of persons, wherein the gathered traffic information comprises traffic information gathered by at least one of the one or more information monitoring devices, and
    (iii) the gathered information further comprises gathered product interaction information of the plurality of persons, wherein
        (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more information monitoring devices, and
        (B) the product interaction information is based upon type of interactions the persons had with one or more products, and
    (iv) the gathered information further comprises gathered object identification information, wherein
        (A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and
        (B) the object identification information comprises the one or more products that the persons interacted with during the product interactions;
(b) providing the information analysis to a brand entity for enhancing in-store shopping experience of customers of one or more brick-and-mortar retail stores, wherein
    (i) the brand entity is an entity that provides one or more brand products to one or more brick-and-mortar retails store; and,

    (c) enhancing the in-store shopping experience of the customers of the one or more brick-and-mortar retail stores by an experience from the brand entity selected from the group consisting of

        (i) engagement of the customer based upon the information analysis, wherein the engagement is received by the customer using one or more displays and content of the engagement being displayed on the one or more displays is selected based upon the information analysis and based upon the one or more brand products,

        (ii) engagement of the customer based upon the information analysis, wherein the engagement is received by the customer by a second person at the brink-and-mortar retail store who can directly interact with the customer based upon (A) the information analysis received by the second person by an electronic communication sent to the second person by a system at the brink-and-mortar retail store and (B) based upon the one or more brand products,

        (iii) provision of marketing or advertising information directed to the customer based upon the analyzed information and based upon the one or more brand products, wherein the marketing or advertising information is received by the customer through a display at the one or more brick-and-mortar retail stores or by receiving the marketing or advertising information on a mobile device of the customer, and

        (iv) provision of a coupon directed to the customer based upon the analyzed information, wherein the coupon is received by the customer either as a printed out coupon or as a digital coupon.

## THE '121 PATENT

91.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,354,121 (the "'121 Patent") titled "Method And System For Shopping In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '121 Patent is attached to this Complaint at Exhibit H.

92.    The '121 Patent issued from U.S. Patent Application No. 18/651,410 filed on April 30, 2024, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

93.    The Patent Office issued the '121 Patent on July 8, 2025, after a full and fair examination.

94.    The '121 Patent is valid and enforceable.

95.     The '121 Patent introduces a novel system for tracking customer movement, for tracking products retained while shopping, for tracking to a point-of-sale area, and for interfacing with this information in the point-of-sale area for payment of the products.

96.     The '121 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring products retained for purchase and for allowing purchase of the products by the shopper within the point-of-sale area. The patent provides innovative solutions to enhance in-store customer experiences and to increase the speed and efficacy of the shopper's purchase transaction.

97.     The inventors of the '121 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the shopper's purchase experience in a retail store by recording the users location during shopping, the items retained by the customer for purchase, and then providing a seamless purchase experience for the shopper at the point-of-sale area of the retail store.

98.     The '121 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the speed and ease of the customer's purchase experience.



FIG. 1



FIG. 2

99.    The '121 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and items selected for purchase, maintain a list of items selected for purchase, and providing for purchase of such items in the point-of-sale area of the retail store.

100.    Claim 1 of the '121 Patent reads:

1. A method comprising using a system comprising a server, one or more information monitoring devices, and one or more databases, wherein the method comprises:
(a) using at least one of the one or more information monitoring devices to identify a first person at a retail store, wherein
    (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,

(ii) the one or more first information monitoring devices are selected from a group consisting of computing devices, user input and output devices, displays, POS devices, cameras, sensors; WIFI devices; in-store customer devices; output devices; system for communicating to user devices, and kiosks, and

(iii) the one or more information monitoring devices are operably connected to (A) the server, (B) the one or more databases, or (C) both;

(b) using at least one of the one or more of the information monitoring devices to gather shopping information of the first person at the retail store, wherein

(i) the gathered shopping information comprises gathered traffic information of the first person, wherein

(A) the gathered traffic information comprises traffic information of the first person gathered by at least one of the one or more information monitoring devices, and

(B) the traffic information comprises identification of one or more stops that the first person makes within and about the retail store,

(ii) the gathered shopping information further comprises gathered product interaction information of the first person at the retail store, wherein

(A) the gathered product interaction information comprises product interaction information of the first person gathered by at least one of the one or more information monitoring devices, and

(B) the product interaction information is based upon type of product interactions the first person had with one or more products at the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products viewed by the first person at the retail store at each of the one or more stops, (II) the one or more products picked up by the first person at the retail store at each of the one or more stops, (III) the one or more products put down by the first person at the retail store at each of the one or more stops, ((IV) the one or more products carried away by the first person at the retail at each of the one or more stops, and (V) combinations thereof, and

(iii) the gathered shopping information further comprises gathered object identification information, wherein

(A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and

(B) the object identification information comprises the one or more products that the first person interacted with during the product interactions; and

(c) analyzing by the system, in real time, the gathered shopping information to generate and maintain a list of the one or more products that the first person interacted with during the product interactions, wherein the list comprises a

listing of the products retained by the first person while shopping at the retail store;

(d) using the one or more of the information monitoring devices to track the first person to a point-of-sale area of the retail store;

(e) in response to the first person being tracked to the point-of sale area, interfacing the system, in real time, with a payment system for payment by the first person of the list of the products retained by the first person while shopping at the retail store at the point-of-sale area; and

(f) transmitting a receipt to the first person after payment by the first person, wherein the receipt comprises the list of the products purchased at the retail store.

## THE '718 PATENT

101.    Alpha Modus filed United States Patent Application Serial No. 18/905,975 (which became the '718 Patent) on October 3, 2024, which is a continuation of United States Patent Application Serial No. 18/651,410, filed on April 30, 2024, which is a continuation of United States Patent Application Serial No. 18/519,550, filed on November 27, 2023, which is a continuation of United States Patent Application Serial No. 18/100,377, filed on January 23, 2023, now U.S. Patent No. 12,026,731, which is a continuation of United States Patent Application Serial No. 17/590,605, filed on February 1, 2022, now U.S. Patent No. 12,039,550, which is a continuation of United States Patent Application Serial No. 16/837,645, filed on April 1, 2020, now U.S. Patent No.11,301,880, which is a continuation of United States Patent Application Serial No.16/509,343, filed on July 11, 2019, now U.S. Patent No.10,853,825, which is a continuation of United States Patent Application Serial No.14/335,429, filed on July 18, 2014, now U.S. Patent No. 10,360,571. A true and correct copy of the '718 Patent is attached to this Complaint at Exhibit I.

102.    The United States Patent and Trademark Office published the '718 Patent on January 23, 2025.

103.    The '718 Patent introduces a novel method for using information monitoring devices within a retail store to gather information about individual shoppers, including tracking products retained while shopping, monitoring the shopper's movement to a point-of-sale area, and identifying products being purchased at checkout.

104.    The '718 Patent addresses the challenges brick-and-mortar retailers face in understanding customer behavior, ensuring the accuracy of product tracking, and improving real-time interactions between shoppers and sales associates. The application provides innovative solutions that leverage video imaging devices and other monitoring systems to generate actionable data during the shopping and purchasing process.

105.    The inventors of the '718 Patent recognized the need for retailers to adapt to evolving consumer behavior by implementing systems capable of analyzing shopper behavior in real time, maintaining accurate records of retained and being-purchased products, and enabling targeted assistance by sales associates to improve both efficiency and personalization in the purchase experience.

106.    The '718 Patent provides several advancements over prior systems, including the ability to generate and compare lists of products retained and products being purchased, detect discrepancies, and utilize this real-time comparison to automatically select and notify a sales associate. These improvements enhance transaction accuracy, operational speed, and the overall customer experience in the retail environment.

107.    The '718 Patent describes and claims a specific system comprising servers, databases, video imaging devices, and other information monitoring devices to gather and analyze shopper information, maintain product lists, and communicate this information to sales associates for direct interaction with shoppers in the store.

108.    Claim 1 of the '718 Patent reads:

1.A method comprising:
(a) using one or more information monitoring devices to gather information about a first person in a group of persons at a retail store, wherein
    (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,
    (ii) the one or more information monitoring devices are operably connected to
        (A) a server,
        (B) one or more databases, or
        (C) both,
    (iii) the one or more information monitoring devices comprise one or more video image devices, and
    (iv) the step of gathering information using the one or more information monitoring devices comprises
        (A) gathering information of one or more products that the first person retained while shopping at the store,
        (B) tracking the first person to a point-of-sale area of the retail store, and
        (C) utilizing the one or more information monitoring devices to identify one or more being-purchased products that the person is providing for purchase at the retail store in the point-of-sale area;
(b) analyzing by the system, in real time, the information gathered by the information monitoring devices to
    (i) generate and maintain a list of the one or more products retained by the first person while shopping at the retail store, wherein the list comprises a listing of the products retained by the person while shopping at the retail store;
    (ii) generate a listing of the one or more being-purchased products;
    (iii) comparing the listing of the products retained by the person while shopping at the retail store with the listing of the one or more being- purchased products;
(c) in response to at least some of the comparisons generated by the system, utilizing the real time analysis to select a sales associate from a group of sales associates at the retail store; and
(d) sending a communication to the sales associate that comprises at least a portion of (i) the information gathered by the information monitoring devices, (ii) the real time analysis, or (iii) both; wherein the sales representative can then directly interact with the first person in response to the communication.

## **V-COUNT**

109.    V-Count is an international technology company that specializes in delivering real-time people-counting, customer-analytics, and behavior-intelligence solutions for physical spaces, including retail stores, shopping malls, airports, museums, and entertainment venues.

110.    V-Count represents that it is research- and development-driven, emphasizing its proprietary hardware sensors, AI-powered analytics engine, and cloud-based platform for delivering accurate, real-time insights into visitor behavior, conversion, and traffic patterns. Its solutions integrate computer vision, machine learning, and sensor-based measurement technologies.

111.    V-Count states that its mission is to provide businesses with advanced visitor-analytics tools that increase operational efficiency, enhance marketing performance, optimize staffing, and improve customer experience by turning physical-world movement and demographic patterns into actionable intelligence.

112.    V-Count's hardware and software products—including its proprietary Ultima Series sensors, demographic analysis modules, zone analytics, queue management systems, and its "Business Intelligence Platform"—together comprise the "Accused Products" that infringe the Asserted Patents in this case. V-Count describes these products as enabling demographic analysis, age and gender estimation, visitor flow tracking, engagement measurement, and real-time behavioral monitoring.

113.    V-Count advertises that its Accused Products are deployed across a wide variety of industries, including retail, quick-service restaurants, shopping malls, airports, casinos, fitness centers, automotive dealerships, telecommunications stores, supermarkets, and other commercial environments.



https://v-count.com/industries/

114.    The Accused Products are further described in detail in V-Count's own materials, which highlight AI-driven demographic analytics, customer behavior mapping, real-time heat-maps and zone analytics, "passer-by vs. visitor" tracking, conversion funnel analysis, and facial-attribute estimation technologies:



https://v-count.com/nano-ai-people-counting-sensor/

115.    The Accused Products practice the patented systems and methods of the Asserted Patents.

116.    V-Count has been aware of Alpha Modus and the Asserted Patents at least as early as the filing of this complaint.

117.    The financial gains accrued by V-Count through the use of Alpha Modus's patented technology have been substantial, providing V-Count with competitive advantages in the retail market.

118.    The benefits reaped by V-Count through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

119.    This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by V-Count, which has led to significant commercial gains for V-Count at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT INFRINGEMENT OF THE '825 PATENT)

120.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

121.    V-Count has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '825 Patent, including the Accused Products.

122.    The Accused Products embody a method for monitoring and analyzing consumer behavior, including through the use of digital display systems, sensors, and data analytics tools that capture and process consumer interactions in retail environments.

123.    The Accused Products include systems operably connected to one or more servers and databases, which execute computer-executable instructions to monitor consumer activity, track interactions with products, and analyze collected behavioral information.

124.    The Accused Products collect information about consumer movement, product interaction, and related behavioral metrics, which are used to generate insights into consumer shopping patterns.

125.    The Accused Products use the collected information to provide personalized content, marketing, and recommendations to consumers based on their monitored behavior and interactions within the retail store.

126.    V-Count has directly infringed the '825 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '825 Patent.

127.    The Accused Products satisfy each and every element of the asserted claim of the '825 Patent either literally or under the doctrine of equivalents.

128.    V-Count's infringing activities are and have been without authority or license under the '825 Patent.

129.    As a direct and proximate result of V-Count's infringement of the '825 Patent, Alpha Modus has suffered and will continue to suffer damage.

130.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count has been aware of the '825 Patent and its infringement thereof. Despite this knowledge, V-Count has continued to make, use, sell, and offer for sale the Accused Products.

131.    Alpha Modus is informed and believes that V-Count knew or was willfully blind to the patented technology of the '825 Patent. Despite this knowledge or willful blindness, V-Count

has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

132. Alpha Modus is informed and believes that V-Count has made no efforts to avoid infringement of the '825 Patent, despite its knowledge and understanding that its products and systems infringe the '825 Patent.

133. Therefore, V-Count's infringement of the '825 Patent is willful and egregious, warranting an enhancement of damages.

134. As such, V-Count has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '825 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## **COUNT II**

### **(INDUCED PATENT INFRINGEMENT OF THE '825 PATENT)**

135. Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

136. V-Count is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '825 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '825 Patent.

137. V-Count's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '825 Patent.

138.     V-Count's use of the Accused Products demonstrates specific intent to induce infringement of the '825 Patent. V-Count encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '825 Patent.

139.     V-Count's knowledge of the '825 Patent, combined with its ongoing use of the Accused Products, demonstrates V-Count's knowledge and intent that the Accused Products be used in a manner that infringes the '825 Patent.

140.     V-Count's actions and the manner in which the Accused Products are used by V-Count's customers, consistent with V-Count's promotions and instructions, demonstrate V-Count's specific intent to induce infringement of the '825 Patent.

141.     Alpha Modus is informed and believes, and on that basis alleges, that V-Count knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with its customers, one or more claims of the '825 Patent.

142.     As a direct and proximate result of V-Count's induced infringement of the '825 Patent, Alpha Modus has suffered and will continue to suffer damage.

143.     Alpha Modus is entitled to recover from V-Count compensation in the form of monetary damages suffered as a result of V-Count's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT INFRINGEMENT OF THE '672 PATENT)

144.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

145.    V-Count has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '672 Patent, including the Accused Products.

146.    The Accused Products embody a system for real-time inventory management, marketing, and advertising in a retail store setting, as claimed in the '672 Patent.

147.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '672 Patent.

148.    The functions include identifying, via image recognition, an inventory of retail products physically located at a display location in the store, displaying information about the products, determining and displaying current pricing information, receiving real-time data of a customer using one or more information monitoring devices, and generating promotions for the customer based on behavioral analytics.

149.    V-Count has directly infringed the '672 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '672 Patent.

150.    The Accused Products satisfy each and every element of the asserted claim of the '672 Patent either literally or under the doctrine of equivalents.

151.    V-Count's infringing activities are and have been without authority or license under the '672 Patent.

152.    As a direct and proximate result of V-Count's infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

153.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count has been aware of the '672 Patent and its infringement thereof. Despite this knowledge, V-Count has continued to make, use, sell, and offer for sale the Accused Products.

154.    Alpha Modus is informed and believes that V-Count knew or was willfully blind to the patented technology of the '672 Patent. Despite this knowledge or willful blindness, V-Count has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

155.    Alpha Modus is informed and believes that V-Count has made no efforts to avoid infringement of the '672 Patent, despite its knowledge and understanding that its products and systems infringe the '672 Patent.

156.    Therefore, V-Count's infringement of the '672 Patent is willful and egregious, warranting an enhancement of damages.

157.    As such, V-Count has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '672 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## **COUNT IV**

## **(INDUCED PATENT INFRINGEMENT OF THE '672 PATENT)**

158.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

159.    V-Count is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '672 Patent , at least as early as the filing of this Complaint, because it knowingly

induces, aids, and directs others to use the Accused Products in a manner that infringes the '672 Patent.

160.    V-Count's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '672 Patent.

161.    V-Count's use of the Accused Products demonstrates specific intent to induce infringement of the '672 Patent. V-Count encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '672 Patent.

162.    V-Count's knowledge of the '672 Patent, combined with its ongoing use of the Accused Products, demonstrates V-Count's knowledge and intent that the Accused Products be used in a manner that infringes the '672 Patent.

163.    V-Count's actions and the manner in which the Accused Products are used by V-Count's customers, consistent with V-Count's promotions and instructions, demonstrate V-Count's specific intent to induce infringement of the '672 Patent.

164.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with its customers, one or more claims of the '672 Patent.

165.    As a direct and proximate result of V-Count's induced infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

166.    Alpha Modus is entitled to recover from V-Count compensation in the form of monetary damages suffered as a result of V-Count's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '890 PATENT)

167.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

168.    V-Count has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the Accused Products.

169.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

170.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

171.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

172.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to directing a person to a product location, engaging the person based on the product, providing marketing or advertising information, and offering coupons.

173.    V-Count has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

174.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

175. V-Count's infringing activities are and have been without authority or license under the '890 Patent.

176. As a direct and proximate result of V-Count's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

177. Alpha Modus is informed and believes, and on that basis alleges, that V-Count has been aware of the '890 Patent and its infringement thereof. Despite this knowledge, V-Count has continued to make, use, sell, and offer for sale the Accused Products.

178. Alpha Modus is informed and believes that V-Count knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, V-Count has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

179. Alpha Modus is informed and believes that V-Count has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

180. Therefore, V-Count's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

181. As such, V-Count has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

182.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

183.    V-Count is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

184.    V-Count's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '880 Patent.

185.    V-Count's use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. V-Count encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

186.    V-Count's knowledge of the '890 Patent, combined with its ongoing use of the Accused Products, demonstrates V-Count's knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent.

187.    V-Count's actions and the manner in which the Accused Products are used by V-Count's customers, consistent with V-Count's promotions and instructions, demonstrate V-Count's specific intent to induce infringement of the '890 Patent.

188.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with its customers, one or more claims of the '890 Patent.

189.    As a direct and proximate result of V-Count's induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

190.    Alpha Modus is entitled to recover from V-Count compensation in the form of monetary damages suffered as a result of V-Count's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII

## (DIRECT INFRINGEMENT OF THE '120 PATENT)

191.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

192.    V-Count has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '120 Patent, including the Accused Products.

193.    The Accused Products embody a method for gathering information about shopping activities of a plurality of consumer utilizing the Accused Products at a retail store in a retail store setting, as claimed in the '120 Patent.

194.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '120 Patent.

195.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

196.    The Accused Products generate layout information about the retail store and use the information gathered by the system in order to make recommendations to improve the layout of products in the store.

197.    V-Count has directly infringed the '120 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '120 Patent.

198.    The Accused Products satisfy each and every element of the asserted claim of the '120 Patent either literally or under the doctrine of equivalents.

199.    V-Count's infringing activities are and have been without authority or license under the '120 Patent.

200.    As a direct and proximate result of V-Count's infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

201.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count has been aware of the '120 Patent and its infringement thereof. Despite this knowledge, V-Count has continued to make, use, sell, and offer for sale the Accused Products.

202.    Alpha Modus is informed and believes that V-Count knew or was willfully blind to the patented technology of the '120 Patent. Despite this knowledge or willful blindness, V-Count has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

203.    Alpha Modus is informed and believes that V-Count has made no efforts to avoid infringement of the '120 Patent, despite its knowledge and understanding that its products and systems infringe the '120 Patent.

204.    Therefore, V-Count's infringement of the '120 Patent is willful and egregious, warranting an enhancement of damages.

205.    As such, V-Count has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '120 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

### (INDUCED PATENT INFRINGEMENT OF THE '120 PATENT)

206.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

207.    V-Count is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '120 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '120 Patent.

208.    V-Count's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '120 Patent.

209.    V-Count's use of the Accused Products demonstrates specific intent to induce infringement of the '120 Patent. V-Count encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '120 Patent.

210.    V-Count's knowledge of the '120 Patent, combined with its ongoing use of the Accused Products, demonstrates V-Count's knowledge and intent that the Accused Products be used in a manner that infringes the '120 Patent.

211.    V-Count's actions and the manner in which the Accused Products are used in V-Count's stores, consistent with V-Count's instructions, demonstrate V-Count's specific intent to induce infringement of the '120 Patent.

212.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with V-Count, one or more claims of the '120 Patent.

213.    As a direct and proximate result of V-Count's induced infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

214.    Alpha Modus is entitled to recover from V-Count compensation in the form of monetary damages suffered as a result of V-Count's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT IX

## (DIRECT PATENT INFRINGEMENT OF THE '880 PATENT)

215.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

216.    V-Count has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '880 Patent, including the Accused Products.

217.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '880 Patent.

218.    The Accused Products include the use of one or more information monitoring devices to gather information about the shopping activities of persons at a retail store, in line with claim 1 of the '880 Patent.

219.    V-Count's customer's retail stores include a plurality of products stocked within the stores.

220.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and include video image devices.

221.    The Accused Products perform functions such as gathering product interaction information of the person with respect to the products that the person interacts with and gathering object identification information for the products that the persons interacted with during the product interactions.

222.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to sending a communication to a retail person regarding the inventory of the products interacted with.

223.    V-Count has directly infringed the '880 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '880 Patent.

224.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

225.    V-Count's infringing activities are and have been without authority or license under the '880 Patent.

226.    As a direct and proximate result of V-Count's infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

227.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count has been aware of the '880 Patent and its infringement thereof. Despite this knowledge, V-Count has continued to make, use, sell, and offer for sale the Accused Products.

228.    Alpha Modus is informed and believes that V-Count knew or was willfully blind to the patented technology of the '880 Patent. Despite this knowledge or willful blindness, V-Count has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

229.    Alpha Modus is informed and believes that V-Count has made no efforts to avoid infringement of the '880 Patent, despite its knowledge and understanding that its products and systems infringe the '880 Patent.

230.    Therefore, V-Count's infringement of the '880 Patent is willful and egregious, warranting an enhancement of damages.

231.    As such, V-Count has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '880 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT X

## (INDUCED PATENT INFRINGEMENT OF THE '880 PATENT)

232.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

233.    V-Count is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '880 Patent , at least as early as the filing of this Complaint, because it knowingly

induces, aids, and directs others to use the Accused Products in a manner that infringes the '880 Patent.

234.    V-Count's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '880 Patent.

235.    V-Count's use of the Accused Products demonstrates specific intent to induce infringement of the '880 Patent. V-Count encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '880 Patent.

236.    V-Count's knowledge of the '880 Patent, combined with its ongoing use of the Accused Products, demonstrates V-Count's knowledge and intent that the Accused Products be used in a manner that infringes the '880 Patent.

237.    V-Count's actions and the manner in which the Accused Products are used by V-Count's customers, consistent with V-Count's promotions and instructions, demonstrate V-Count's specific intent to induce infringement of the '880 Patent.

238.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with its customers, one or more claims of the '880 Patent.

239.    As a direct and proximate result of V-Count's induced infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

240.    Alpha Modus is entitled to recover from V-Count compensation in the form of monetary damages suffered as a result of V-Count's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XI

## (DIRECT INFRINGEMENT OF THE '731 PATENT)

241.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

242.     V-Count has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '731 Patent, including the Accused Products.

243.     The Accused Products embody a method for obtaining an information analysis of the shopping activities of consumers, for tracking the location of consumers using information monitoring devices, and for providing product communications and store location information based on such analyses, as claimed in the '731 Patent.

244.     The Accused Products utilize servers comprising one or more processors, and server-based databases and applications storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '731 Patent.

245.     The functions implemented by the Accused Products include analyzing gathered product interaction information from consumer shopping activities, tracking the consumer's location relative to retail stores, and generating real-time communications including store-specific promotions, coupons, advertising, and purchase options.

246.     The Accused Products allow V-Count to provide targeted communications to consumers, including coupons, marketing messages, and purchase options such as pickup, delivery, and reduced-price offers during limited promotional periods, all in accordance with the claimed inventions of the '731 Patent.

247.    V-Count has directly infringed the '731 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '731 Patent.

248.    The Accused Products satisfy each and every element of the asserted claim of the '731 Patent either literally or under the doctrine of equivalents.

249.    V-Count's infringing activities are and have been without authority or license under the '731 Patent.

250.    As a direct and proximate result of V-Count's infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

251.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count has been aware of the '731 Patent and its infringement thereof. Despite this knowledge, V-Count has continued to make, use, sell, and offer for sale the Accused Products.

252.    Alpha Modus is informed and believes that V-Count knew or was willfully blind to the patented technology of the '731 Patent. Despite this knowledge or willful blindness, V-Count has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

253.    Alpha Modus is informed and believes that V-Count has made no efforts to avoid infringement of the '731 Patent, despite its knowledge and understanding that its products and systems infringe the '731 Patent.

254.    Therefore, V-Count's infringement of the '731 Patent is willful and egregious, warranting an enhancement of damages.

255.    As such, V-Count has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '731 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XII

## (INDUCED PATENT INFRINGEMENT OF THE '731 PATENT)

256.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

257.    V-Count is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '731 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '731 Patent.

258.    V-Count's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '731 Patent.

259.    V-Count's use of the Accused Products demonstrates specific intent to induce infringement of the '731 Patent. V-Count encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '731 Patent.

260.    V-Count's knowledge of the '731 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates V-Count's knowledge and intent that the Accused Products be used in a manner that infringes the '731 Patent.

261.    V-Count's actions and the manner in which the Accused Products are used by V-Count's customers, consistent with V-Count's instructions, demonstrate V-Count's specific intent to induce infringement of the '731 Patent.

262.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count knew or was willfully blind to the fact that it was inducing others, including its customers and

staff, to infringe by practicing, either themselves or in conjunction with V-Count, one or more claims of the '731 Patent.

263.    As a direct and proximate result of V-Count's induced infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

264.    Alpha Modus is entitled to recover from V-Count compensation in the form of monetary damages suffered as a result of V-Count's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XIII

## (DIRECT INFRINGEMENT OF THE '550 PATENT)

265.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

266.    V-Count has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '550 Patent, including the Accused Products.

267.    The Accused Products embody a system for monitoring and analyzing consumer behavior and product interaction information in a retail store setting, as claimed in the '550 Patent.

268.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '550 Patent.

269.    The functions include gathering and analyzing information from information monitoring devices, including video image devices, to track consumer interactions with retail products, identifying products of interest, associating such information with consumer demographic or behavioral data, and generating personalized marketing or promotional content based on the collected information.

270.    V-Count has directly infringed the '550 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '550 Patent.

271.    The Accused Products satisfy each and every element of the asserted claim of the '550 Patent either literally or under the doctrine of equivalents.

272.    V-Count's infringing activities are and have been without authority or license under the '550 Patent.

273.    As a direct and proximate result of V-Count's infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

274.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count has been aware of the '550 Patent and its infringement thereof. Despite this knowledge, V-Count has continued to make, use, sell, and offer for sale the Accused Products.

275.    Alpha Modus is informed and believes that V-Count knew or was willfully blind to the patented technology of the '550 Patent. Despite this knowledge or willful blindness, V-Count has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

276.    Alpha Modus is informed and believes that V-Count has made no efforts to avoid infringement of the '550 Patent, despite its knowledge and understanding that its products and systems infringe the '550 Patent.

277.    Therefore, V-Count's infringement of the '550 Patent is willful and egregious, warranting an enhancement of damages.

278.    As such, V-Count has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '550 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XIV

### (INDUCED PATENT INFRINGEMENT OF THE '550 PATENT)

279.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

280.     V-Count is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '550 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '550 Patent.

281.     V-Count's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '550 Patent.

282.     V-Count's use of the Accused Products demonstrates specific intent to induce infringement of the '550 Patent. V-Count encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '550 Patent.

283.     V-Count's knowledge of the '550 Patent, combined with its ongoing use of the Accused Products, demonstrates V-Count's knowledge and intent that the Accused Products be used in a manner that infringes the '550 Patent.

284.     V-Count's actions and the manner in which the Accused Products are used by V-Count's customers, consistent with V-Count's promotions and instructions, demonstrate V-Count's specific intent to induce infringement of the '550 Patent.

285.     Alpha Modus is informed and believes, and on that basis alleges, that V-Count knew or was willfully blind to the fact that it was inducing others, including its customers and

staff, to infringe by practicing, either themselves or in conjunction with its customers, one or more claims of the '550 Patent.

286.    As a direct and proximate result of V-Count's induced infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

287.    Alpha Modus is entitled to recover from V-Count compensation in the form of monetary damages suffered as a result of V-Count's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XV

## (DIRECT INFRINGEMENT OF THE '121 PATENT)

288.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

289.    V-Count has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '121 Patent, including the Accused Products.

290.    The Accused Products embody a method for gathering information about shopping activities of consumers utilizing the Accused Products at a retail store in a retail store setting, as claimed in the '121 Patent.

291.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '121 Patent.

292.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

293.    The Accused Products allow the user to make grab and go, self-check-out, and mobile scan and go purchases in point-of-sale areas once the consumer has finished shopping, allowing the user to purchase the retained products quickly.

294.    V-Count has directly infringed the '121 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '121 Patent.

295.    The Accused Products satisfy each and every element of the asserted claim of the '121 Patent either literally or under the doctrine of equivalents.

296.    V-Count's infringing activities are and have been without authority or license under the '121 Patent.

297.    As a direct and proximate result of V-Count's infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

298.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count has been aware of the '121 Patent and its infringement thereof. Despite this knowledge, V-Count has continued to make, use, sell, and offer for sale the Accused Products.

299.    Alpha Modus is informed and believes that V-Count knew or was willfully blind to the patented technology of the '121 Patent. Despite this knowledge or willful blindness, V-Count has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

300.    Alpha Modus is informed and believes that V-Count has made no efforts to avoid infringement of the '121 Patent, despite its knowledge and understanding that its products and systems infringe the '121 Patent.

301.    Therefore, V-Count's infringement of the '121 Patent is willful and egregious, warranting an enhancement of damages.

302.    As such, V-Count has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '121 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XVI

### (INDUCED PATENT INFRINGEMENT OF THE '121 PATENT)

303.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

304.    V-Count is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '121 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '121 Patent.

305.    V-Count's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '121 Patent.

306.    V-Count's use of the Accused Products demonstrates specific intent to induce infringement of the '121 Patent. V-Count encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '121 Patent.

307.    V-Count's knowledge of the '121 Patent, combined with its ongoing use of the Accused Products, demonstrates V-Count's knowledge and intent that the Accused Products be used in a manner that infringes the '121 Patent.

308.    V-Count's actions and the manner in which the Accused Products are used by V-Count's customers, consistent with V-Count's instructions, demonstrate V-Count's specific intent to induce infringement of the '121 Patent.

309.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with V-Count, one or more claims of the '121 Patent.

310.    As a direct and proximate result of V-Count's induced infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

311.    Alpha Modus is entitled to recover from V-Count compensation in the form of monetary damages suffered as a result of V-Count's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XVII

## (DIRECT INFRINGEMENT OF THE '718 PATENT)

312.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

313.    V-Count has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '718 Patent including the Accused Products.

314.    The Accused Products embody a method for gathering information about shopping activities of consumers utilizing the Accused Products at a retail store, as claimed in at least Claim 1 of the '718 Patent.

315.    The Accused Products utilize information monitoring devices, including video image devices and point-of-sale systems, that are operably connected to servers and databases to gather and analyze data on shoppers in real time.

316.    The functions implemented by the Accused Products include gathering product information retained by the shopper while shopping, tracking the shopper to a point-of-sale area, and identifying products being provided for purchase at checkout using video imaging and related monitoring technologies.

317.    The Accused Products generate and maintain lists of products retained and being purchased, compare the lists in real time, and utilize these comparisons to select sales associates for targeted customer engagement.

318.    The Accused Products then send communications to sales associates containing gathered information and real-time analysis, enabling the associate to directly interact with the shopper in the retail store and assist in the purchasing process.

319.    V-Count has directly infringed the '718 Patent in violation of 35 U.S.C. § 154(d) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '718 Patent.

320.    The Accused Products satisfy each and every element of the asserted claim of the '975 Application either literally or under the doctrine of equivalents.

321.    V-Count's infringing activities are and have been without authority or license under the '975 Application.

322.    As a direct and proximate result of V-Count's infringement of the '718 Patent, Alpha Modus has suffered and will continue to suffer damage.

323.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count has been aware of the '718 Patent and its infringement thereof. Despite this knowledge, V-Count has continued to make, use, sell, and offer for sale the Accused Products.

324.    Alpha Modus is informed and believes that V-Count knew or was willfully blind to the patented technology of the '718 Patent. Despite this knowledge or willful blindness, V-Count has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

325.    Alpha Modus is informed and believes that V-Count has made no efforts to avoid infringement of the '718 Patent, despite its knowledge and understanding that its products and systems infringe the '718 Patent.

326.    Therefore, V-Count's infringement of the '718 Patent is willful and egregious, warranting an enhancement of damages.

327.    As such, V-Count has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '718 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XVIII

## (INDUCED PATENT INFRINGEMENT OF THE '718 PATENT)

328.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

329.    V-Count is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '718 Patent, at least as early as the filing of this Complaint, because it knowingly

induces, aids, and directs others to use the Accused Products in a manner that infringes the '718 Patent.

330.    V-Count's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '718 Patent.

331.    V-Count's use of the Accused Products demonstrates specific intent to induce infringement of the '718 Patent. V-Count encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '718 Patent.

332.    V-Count's knowledge of the '718 Patent, combined with its ongoing use of the Accused Products, demonstrates V-Count's knowledge and intent that the Accused Products be used in a manner that infringes the '718 Patent.

333.    V-Count's actions and the manner in which the Accused Products are used by V-Count's customers, consistent with V-Count's instructions, demonstrate V-Count's specific intent to induce infringement of the '718 Patent.

334.    Alpha Modus is informed and believes, and on that basis alleges, that V-Count knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with V-Count, one or more claims of the '718 Patent.

335.    As a direct and proximate result of V-Count's induced infringement of the '718 Patent, Alpha Modus has suffered and will continue to suffer damage.

336.    Alpha Modus is entitled to recover from V-Count compensation in the form of monetary damages suffered as a result of V-Count's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## JURY DEMAND

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Alpha Modus prays for relief against V-Count as follows:

(A)    An entry of judgment that V-Count has infringed and is directly infringing one or more claims of each of the '825 Patent, the '672 Patent, the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent;

(B)    An entry of judgment that V-Count has infringed and is indirectly infringing one or more claims of each of the '825 Patent, the '672 Patent, the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent;

(C)    An entry of judgment that the '825 Patent, the '672 Patent, the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent are valid and enforceable;

(D)    An order pursuant to 35 U.S.C. § 283 permanently enjoining V-Count, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the '825 Patent, the '672 Patent, the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent;

(E)    An order awarding damages sufficient to compensate Alpha Modus for V-Count's infringement of the '825 Patent, the '672 Patent, the '890 Patent, the '120 Patent,

the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent, but in no event less than a reasonable royalty, together with interest and costs;

(F)    A determination that V-Count's infringement has been willful, wanton, deliberate, and egregious;

(G)    A determination that the damages against V-Count be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)    A finding that this case against V-Count is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)    An accounting of all infringing sales and revenues of V-Count, together with post judgment interest and prejudgment interest from the first date of infringement of the '825 Patent, the '672 Patent, the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent; and

(J)    Such further and other relief as the Court may deem proper and just.

Dated: November 21, 2025

Respectfully submitted,

*/s/ Christopher E. Hanba*
Christopher E. Hanba
Texas Bar No. 24121391
chanba@princelobel.com
Ariana D. Pellegrino *
Michigan Bar No. P79104
apellegrino@princelobel.com
Joshua G. Jones
Texas Bar No. 24065517
jjones@princelobel.com
Bryan D. Atkinson
Texas Bar No. 24036157
batkinson@princelobel.com
    * Not admitted in Texas

PRINCE LOBEL TYPE LLP
500 W. 5th Street, Suite 1205
Austin, Texas 78701
Tel: (617) 456-8000

*Attorneys for Plaintiff*
*Alpha Modus, Corp.*